IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| AMANDA R. ABBOOD, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § NO. 4:17-CV-909-A |
| | § |
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, Texas Health and Human Services Commission, for summary judgment. The court, having considered the motion, the response of plaintiff, Amanda R Abbood, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

The operative pleading is plaintiff's third amended original complaint filed November 2, 2018. Doc.[1] 43. In it, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, ("Title VII") for sexual discrimination, hostile work environment, and retaliation. In sum, plaintiff alleges that she was sexually harassed by another employee and that when she reported his actions and pursued the

---

[1]The "Doc. __" reference is to the number of the item on the docket in this action.

matter with the EEOC, defendant retaliated against her by firing her. Plaintiff says that the reason given by defendant for her termination was pretext for discrimination.

II.

Grounds of the Motion

Defendant maintains that plaintiff cannot establish that she was discriminated against based on her sex or subjected to a hostile work environment. Nor can she establish that defendant retaliated against her for engaging in protected activity.

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The summary judgment evidence[3] establishes:

Plaintiff began her employment with defendant in 2014 as a "Texas Works Advisor I," whose primary job duty was to accurately determine client eligibility for various Medicaid programs. Doc. 46 at 2; Doc. 40 at 51. In connection with her employment, plaintiff signed a computer use agreement, recognizing that in the course of her employment she would have access to confidential information (including phone numbers) and specifically agreeing that as a condition to her access to confidential information she would "use confidential information only as needed to perform legitimate duties." Doc. 40 at 52. The computer use agreement concluded with the statement:

---

[2](...continued) explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

[3]The court notes that each party has objected to portions of the summary judgment evidence submitted by the other. As is its practice, the court is not striking any summary judgment evidence, but rather giving the evidence whatever weight it may deserve.

> I understand that my failure to comply with this
> Agreement may result in loss of access privileges to
> HHS applications; <u>disciplinary action</u>, up to and
> including dismissal; and person legal liability.

Id. In addition, plaintiff signed a Data Broker[4] Computer Security Agreement, providing in part that "information obtained from the system shall be used only for official state-approved business." Id. at 54. Further, the agreement provided,

> I understand that inappropriate use of Data Broker
> information is a work rule violation and will result in
> disciplinary action up to and including dismissal,
> exercise of remedies for breach of contract, and/or
> termination of contract.

Id.

In August 2016, plaintiff and another woman reported to their supervisor that they were being sexually harassed by Matt Otts ("Otts"), another employee. Doc. 40 at 64, 72-73, 74-75. Otts was counseled, reassigned to another unit, and his office was moved to the opposite side of the building. Id. at 31-32, 65. Otts was out on medical leave for a significant amount of time. Id. at 32, 65. Plaintiff next complained about Otts' behavior in December 2016. Id. at 28, 65, 76. Otts was removed from the building, placed on emergency leave, and the locks to the main

---

[4] The "Data Broker" system enabled employees to look up more specific information about clients. Doc. 40 at 17. Plaintiff understood that she could not access defendant's systems, including Data Broker, for personal use. Id. at 21.

door were changed. Id. at 65, 87. Otts was terminated. Id. at 65, 88-93.

On December 15, 2016, Robin Weger reported that plaintiff had used the Data Broker system to look for the owner of a dog she found tied up outside at a grocery store during her lunch break. Doc. 40 at 58, 65. Plaintiff freely admitted that she had used the system for that purpose and that she would do so again in that situation. Id. at 28, 58, 65. Plaintiff's supervisor reported the incident and it was determined that plaintiff would be terminated. Id. at 66. Plaintiff was given notice and an opportunity to respond, which she did. Id.; Doc. 46 at 157-58. Plaintiff's responses, both dated January 5, 2017, argued that what she had done (using the Data Broker system for personal research) was not as serious as what Ott had done (in sexually harassing plaintiff) and what others had done (in committing fraud). Id. at 157-58. Plaintiff was terminated effective January 11, 2017. Doc. 40 at 66.

At least two employees prior to plaintiff who accessed the Data Broker system for non-business purposes were terminated. Doc. 40 at 69. There is no evidence that anyone who used the Data Broker system for personal purposes was not fired. See Doc. 46 at 63 (it was a "known thing that if you did something with Data Broker, a violation, that you would normally get terminated").

V.

Analysis

To establish a prima facie claim for discrimination under Title VII plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action by her employer; and (4) she was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). To prove gender discrimination on the basis of disparate discipline, as here, plaintiff must show that the actions taken against her and the comparator employee were under nearly identical circumstances. Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000). That is, she must show that the misconduct for which she was discharged was nearly identical to that engaged in by Otts, who was retained. Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990).

Although plaintiff makes a good argument that the conduct engaged in by Otts was far more despicable, the fact is that the conduct was of a wholly different sort. Otts engaged in sexual harassment, whereas plaintiff misused her work-assigned computer for personal purposes. Plaintiff cannot point to any other person who did what she did and was not terminated. The evidence is to

the contrary. Doc. 40 at 68-69. Because plaintiff cannot prove the fourth element, she cannot prevail on this claim.

To prove her claim for hostile work environment, plaintiff must show: (1) plaintiff belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and, (5) defendant knew or should have known about the harassment and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). To be actionable, the harassment must be both objectively and subjectively offensive. Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). It must be sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Factors considered include the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Id. at 788.

Here, defendant maintains that plaintiff cannot establish the fourth or fifth elements of her claim. Defendant notes that the alleged harasser was not a supervisor, but merely a coworker. This matters because where the alleged harasser is a supervisor, the plaintiff need only establish the first four elements in making a prima facie case. Matherne v. Ruba Mgmt., 624 F. App'x 835, 839 (5th Cir. 2015). Stated another way, an employer may be held vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or making a decision causing a significant change in benefits. Vance v. Ball State Univ., 570 U.S. 421, 431 (2013).

In this case, plaintiff pleaded that the harasser, Otts, "in relation to Plaintiff, was in a supervisory position." Doc. 43, ¶ 10. However, the summary judgment evidence, including plaintiff's own testimony, establishes that Otts was not plaintiff's supervisor. See, e.g., Doc. 40 at 36, 65; Doc. 46 at 3 (plaintiff says she and Otts had similar job duties and were under supervision of the same supervisor). See also Doc. 45 at

22-23 (twice stating that Otts and plaintiff were similarly situated).

More importantly, the summary judgment evidence establishes that this is not the type of case where it could be said that the alleged harassment was so severe or pervasive as to alter a condition of plaintiff's employment.[5] See, e.g., E.E.O.C. v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444 (5th Cir. 2013); E.E.O.C. v. WC&M Enters., Inc., 496 F.3d 393 (5th Cir. 2007). Although plaintiff generally avers that she was sexually harassed constantly and in many ways, her affidavit is conclusory and does not provide sufficient facts to raise a genuine issue in this regard. In her deposition, plaintiff admitted that Otts never touched her in a way that was unwelcoming, propositioned her or asked for sex. He never exposed himself, sent or requested photographs, or sent any written communications to plaintiff. Doc. 40 at 36. Rather, Otts made comments about how flattering plaintiff's clothes were on her body. Id. at 33. One time when plaintiff put lotion on her hands, Otts told her she was getting him going, indicating that he was getting an erection. Id. at 34. He told plaintiff about his sex life and marital problems. Id. Plaintiff surmised that she was not as forceful as she should

---

[5]Thus, the court need not reach the fifth element in any event. (The record does reflect that defendant took prompt remedial action following her initial complaint, even though plaintiff contends it was not sufficient. And, Otts was fired after the December complaints.)

10

have been in telling him to stop, because "[h]e always thought everything was a big joke." Id. at 34. Plaintiff reported Otts for sexual harassment in August[6] and December[7] of 2016. Id. at 28-29. Plaintiff did her work properly and competently and there was never a time when she did not get her work assignments done. Doc. 46 at 3-4. In sum, plaintiff has not shown that she was subjected to a hostile work environment.

To state a claim for retaliation under Title VII, plaintiff must allege that she participated in an activity protected by Title VII, her employer took an adverse employment action against her, and a causal connection exists between the protected activity and the adverse employment action. McCoy, 492 F.3d at 557. "Protected activity" means any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, hearing or proceeding under Title VII. Lopez v. Kempthorne, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010). For there to be a causal connection, the employer must know about the employee's protected activity. Manning v.

---

[6]Plaintiff testified that she was afraid to report Otts by herself, so she found a coworker who had also been harassed and she and the coworker each made an initial report to their supervisor. Doc. 40 at 30-31. Between August and December, Otts was moved to the other side of the building. Id. at 31-32. After that, Otts went on medical leave for a month or so. Id. at 35. Then, he slowly made his way back over to plaintiff's side of the building "to seemingly find pointless things to do in order to talk to us." Id. at 32. It was "an uncomfortable situation." Id. at 35.

[7]On December 15, 2016, plaintiff and the same coworker reported that on December 14, Otts had told each of them how nice she looked and that he wanted to "jump [plaintiff's] bones." Doc. 40 at 76, 77. Otts was terminated. Id. at 65.

Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003). Temporal proximity between the protected activity and the adverse employment action, by itself, is insufficient to create a genuine issue of material fact as to causation. Lopez, 684 F. Supp. 2d at 863 (citing cases). Once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, plaintiff must offer some evidence from which to infer that retaliation was the real motive. McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007).

In this case, plaintiff says that she was fired in retaliation for taking her complaint about Otts to the EEOC.[8] The summary judgment evidence establishes that in August 2016, plaintiff made known to defendant that she was considering filing a complaint about Otts with the EEOC. Doc. 46 at 156. And, on December 20, 2016, she asked for the next day off to meet her attorney to file a formal complaint with the EEOC. Doc. 40 at 60. On January 11, 2017, plaintiff was notified that her employment was immediately terminated. Doc. 40 at 66. As for the causal connection between the protected activity and the termination,

---

[8]Plaintiff's complaint also referred to her having reported cases of fraud over a period of time as a reason for her termination. Doc. 43, ¶ 14. And, she testified that she thought that was a reason she was fired. Doc. 40 at 29. Plaintiff's response appears to recognize that such reporting would not support a retaliation claim, Doc. 45 at 16, as does at least one of the cases plaintiff cites, id. at 18 (citing E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 242 (5th Cir. 2016)(noting that even the EEOC would not argue that reporting accounting fraud could give rise to a retaliation claim). Plaintiff did not assert any kind of whistleblower claim in this action.

plaintiff's only argument and evidence is that she "had not done anything at work which justified firing." Doc. 45 at 51. The overwhelming summary judgment evidence is to the contrary. As plaintiff admitted, she had used her work computer and the Data Broker system for personal purposes. The agreements she signed clearly gave notice, which plaintiff understood, that neither her computer nor the system was to be used for other than work-related purposes. No other person who did what plaintiff did remained employed by defendant. That plaintiff sincerely believed that her actions merited a lesser sanction, e.g., Doc. 46 at 157-58, does not create a fact issue for trial.

Even assuming plaintiff had made a prima facie showing of retaliation, defendant has come forward with a legitimate, non-retaliatory reason for her termination. To show that defendant's reason was actually a pretext for discrimination, plaintiff must show that she would not have been terminated "but for" the retaliatory reason. Univ. of Tex. Sw. Med. Ctr., 570 U.S. 338, 360 (2013). For the reasons discussed, plaintiff has not, and cannot, make that showing.

VI.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing

13

on her claims against defendant; and that plaintiff's claims be, and are hereby, dismissed with prejudice.

SIGNED November 30, 2018.

_____
JOHN McBRYDE
United States District Judge